Kayser-Roth Corp. v. Gallotti, 2025 NCBC 76.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV002799-400

KAYSER-ROTH CORPORATION,

    Plaintiff and
    Counterclaim Defendant,

v.

NICOLA GALLOTTI,

    Defendant and
    Counterclaim Plaintiff.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR PARTIAL
DISMISSAL OF DEFENDANT'S
AMENDED COUNTERCLAIMS**

1.    **THIS MATTER** is before the Court on the 30 July 2025 filing of the *Plaintiff's Motion for Partial Dismissal of Defendant's Amended Counterclaims* (the Motion).  (ECF No. 33 [Mot.].)

2.    For the reasons set forth herein, the Court **GRANTS in part** and **DENIES in part** the Motion.

> *Tharrington Smith, LLP by F. Hill Allen and Colin A. Shive; and Blank Rome LLP by Francesco Di Pietro, for Plaintiff and Counterclaim Defendant Kayser-Roth Corporation.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP by Sarah E. Morehouse, Benjamin R. Norman, and Kearns Davis; and Harris St. Laurent & Wechsler, LLP by Todd Gutfleisch and Megan Dubatowka, for Defendant and Counterclaim Plaintiff Nicola Gallotti.*

Robinson, Chief Judge.

## I.    INTRODUCTION

3.    This action arises out of Defendant Nicola Gallotti's (Defendant) employment with, and termination from, Plaintiff Kayser-Roth Corporation (Plaintiff).  Plaintiff alleges that it terminated Defendant for misconduct constituting

breaches of fiduciary duty, contract, and agency, and that it does not owe Defendant certain payments under an employment agreement because Defendant's termination was for cause. Defendant contends that he is due these payments because he was not fired for cause but for retaliatory reasons unrelated to his performance, and that Plaintiff misrepresented the terms of the employment agreement to induce him to sign it.

## II.    FACTUAL BACKGROUND

4.    The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the Rule(s)). *Trail Creek Invs. LLC v. Warren Oil Holding Co.*, 2023 NCBC LEXIS 70, at *2 (N.C. Super. Ct. May 9, 2023). Instead, the Court draws its factual summary from the allegations in the counterclaim and the exhibits attached thereto. *See Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at *2 (N.C. Super. Ct. June 9, 2017).

5.    Plaintiff is a legwear manufacturer and importer of leggings and sleepwear primarily sold in the United States. (Def.'s Am. Countercls. & Answer to Pl.'s Compl. ¶ 17, ECF No. 22 [Am. Countercls.].) Plaintiff is incorporated under Delaware law and has corporate offices in Greensboro, North Carolina and New York, New York. (Am. Countercls. ¶ 13.)

6.    Defendant is a resident of New York. (Am. Countercls. ¶ 12.) From 20 August 2018 to 15 October 2024, Defendant maintained an address in Greensboro. (Am. Countercls. ¶ 12.)

7. On 13 July 2018, Defendant and Plaintiff were negotiating the terms of an employment agreement. (Am. Countercls. ¶ 29.) That day, Defendant emailed Simone Cerini (Ms. Cerini), Plaintiff's representative in the negotiations, with proposed changes to a severance provision:

> Dear [Ms. Cerini],
>
> [P]lease find attached the agreement with our latest marked revisions. Please note I changed severance to 18 months (half way between our different position of 12 and 24) with the hope this is acceptable.[1]

(Am. Countercls. Ex. B, ECF No. 22.2 [July 13 Email Exch.]; Am. Countercls. ¶ 29.) The red-lined markup of the agreement attached to Defendant's email showed that the severance provision had been revised as follows:

> **6. Severance Payments.** In the event that [Defendant] is terminated by [Plaintiff] without Cause (as defined herein) <u>or by the Executive for Good Reason (as defined herein),</u> [Defendant] shall receive a single lump sum severance payment equal to one <u>and a half</u> times his Base Salary within 60 days following the termination of employment[.]

(Am. Countercls. ¶ 29.)

8. Ms. Cerini responded to Defendant's email with the following:

> Good morning [Defendant],
> I am pleased to confirm that the 18 months of severance have been approved.
>
> I have forwarded the new revision directly to the Ownership, which will coordinate with the American lawyers.

(July 13 Email Exch.; Am. Countercls. ¶ 30.)

---

[1] The Court notes that many of Defendant's exhibits are originally in Italian, and that at least one of the English translations Defendant provided was created using Google Translate. (*See, e.g.*, ECF No. 22.2.) Because Plaintiff does not contest the accuracy of these translations, the Court treats them as accurate.

9.     On 18 July 2018, Plaintiff and Defendant executed a finalized employment agreement (the Agreement).  (Am. Countercls. Ex. A, ECF No. 22.1 [Agreement].)  Pursuant to the Agreement, Defendant became a member of Plaintiff's Board of Directors on 20 August 2018, and Plaintiff's President and Chief Executive Officer on or around 20 December 2018.  (Am. Countercls. ¶¶ 21, 33; Agreement § 1.)

10.     Sections 3 and 4 of the Agreement describe Defendant's "Base Salary" and "Annual Bonus," respectively:

> **3. Base Salary.**    [Plaintiff] agrees to pay to [Defendant] for [Defendant's] services during the term of this Agreement a monthly base salary of $ 33,333.34 . . . for calendar year 2018 and a monthly base salary of $ 37,500.00 . . . starting January 1, 2019.  This base salary may be increased from time to time as approved by the Board.  The Base Salary shall be payable in accordance with [Plaintiff's] customary payroll practices applicable to its executives, but payable in installments no less frequent than monthly.
>
> **4. Annual Bonus.**    [Defendant] is eligible to participate in the Executive bonus plan beginning in calendar year 2019, which is designed to a maximum payout of 40% of the base salary.  The Board in its discretion shall specify goals for achievement of each annual bonus by no later than March 30th of the year in which the bonus is earned, and if the Board fails to set forth such goals in writing and delivered [sic] to [Defendant] by March 30th of the year of the payment of the bonus, [Defendant's] bonus shall be paid at 100% of maximum payout.  In the event [Defendant] dies or, becomes total [sic] and permanently disabled and terminates employment, [Defendant] may receive a pro-rata of the Annual Bonus through the date of termination of employment (with the goals also pro-rated for the purpose of measuring achievement), payable no later than 75 days after close of applicable fiscal year.  If [Defendant] is discharged for Cause, as defined, at any time before the date of bonus distribution, he shall forfeit any and all rights to a bonus under the Plan, even if the employee is on the payroll on the last day of the Plan Year.

(Agreement §§ 3–4.)

11. The Agreement further provides that, "[i]n the event that [Defendant] is terminated by [Plaintiff] without Cause . . . [Defendant] shall receive a single lump sum severance payment equal to one and a half times his Base Salary within 60 days following the termination of employment[.]" (Agreement § 6.)

12. The Agreement defines "Cause" to mean the following:

"Cause" shall mean if [Defendant]: (i) is convicted of or pleads nolo contendere to a felony; (ii) commits fraud or a material act or omission involving dishonesty with respect to the Company or any of its respective employees, customers or affiliates, as reasonably determined by the Company; (iii) willfully fails or refuses to carry out the material responsibilities of [Defendant's] employment by the Company; (iv) engages in gross negligence, willful misconduct, or a pattern of behavior which has had or is reasonably likely to have a significant adverse effect on the Company, as reasonably determined by the Company; or (v) commits a material breach of [Defendant's] material obligations under this Agreement or violation of any Company policies or confidentiality responsibility applicable to [Defendant].

(Agreement § 4.)

13. In relevant part, Section 15 of the Agreement states that

[any] payments made pursuant to this Agreement shall be subject to applicable tax or similar withholding requirements under applicable federal, state or local employment or income tax laws or similar statutes or other provisions of law then in effect. The Company and [Defendant] intend that the payments and benefits provided for in this Agreement either be exempt from Section 409A of the Code, or be provided in a manner that complies with Section 409A of the Code, and any ambiguity herein shall be interpreted so as to be consistent with the intent of this paragraph.

(Agreement § 15.)

14. The Agreement also has a merger clause providing that it

supersedes all prior agreements between the parties, whether written or oral, with respect to its subject matter and is intended as a complete and exclusive statement of the terms of the agreement between the

parties with respect thereto and may be amended only by a writing signed by both parties hereto.

(Agreement § 13.) The Agreement contains a North Carolina choice-of-law clause. (Am. Countercls. ¶ 32; Agreement § 11.)

15. From 2019 to 2020, Defendant's annual salary was $450,000. (Am. Countercls. ¶¶ 22, 59.) From 2021 to 2024, Defendant's annual salary was $500,000. (Am. Countercls. ¶¶ 22, 59.) Defendant was enrolled in Plaintiff's Non-Qualified Deferred Compensation Plan during his employment with Plaintiff. (Am. Countercls. ¶¶ 9, 61.)

16. On or about 27 March 2024, Ms. Grassi orally promised to amend the annual bonus plan to, among other things, pay Defendant a $500,000 bonus for 2024. (Am. Countercls. ¶ 43.) Ms. Grassi made this promise in recognition of Defendant's strong performance. (Am. Countercls. ¶ 43.) In June 2024, Defendant memorialized the oral agreement and requested that Ms. Grassi execute the amendment. (Am. Countercls. ¶ 44.) On 7 October 2024, Defendant renewed his request via email. (Am. Countercls. ¶ 44; Am. Countercls. Ex. C, ECF No. 22.3.) Ms. Grassi did not execute the amendment. (Am. Countercls. ¶ 45.)

17. By letter dated 15 October 2024, Plaintiff informed Defendant that it was terminating Defendant for cause. (Am. Countercls. ¶ 46; Am. Countercls. Ex. D, ECF No. 22.4 [Termination Letter].) The letter (the Termination Letter) stated that the grounds for Defendant's termination were his "deficient performance, material breach of [his] material obligations and material responsibilities relating to [his] employment, gross negligence, and conduct that has caused and continues to cause

harm to [Plaintiff.]" (Termination Letter 1.) Among other things, the Termination Letter stated that (i) "[Plaintiff's] net income, net sales and net-worth during [Defendant's] employment [were] significantly lower" than they were prior to Defendant's employment; (ii) Defendant negligently handled "[the] debt and the relationship between" Plaintiff and a lender; (iii) Defendant mismanaged Plaintiff's purchase of inventory, thereby increasing its debt and causing "serious cashflow issues"; (iv) Defendant's conduct caused several of Plaintiff's employees to resign; and (v) Defendant failed to hire suitable replacements for the employees who resigned. (Termination Letter 1–4.) The Termination Letter was signed by Ms. Grassi. (Am. Countercls. ¶ 46; Termination Letter 5.)

18. Defendant has not received payment of lump sum severance, annual bonuses for years 2021 through 2024, or deferred compensation for years 2021 through 2024 from Plaintiff. (*See* Am. Countercls. ¶¶ 77–78.)

### III. PROCEDURAL BACKGROUND

19. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

20. Plaintiff filed the *Amended Complaint* on 12 February 2025. (ECF No. 5.)

21. Defendant filed *Nicola Gallotti's Counterclaims and Answer to Kayser-Roth Corporation's Complaint* (the Original Counterclaim) on 14 March 2025, asserting claims for breach of contract and violations of the North Carolina Wage and Hour Act (NCWHA), N.C.G.S. § 95-25.1 *et seq*. (ECF No. 8 [Orig. Countercl.].) Defendant filed *Nicola Gallotti's Amended Counterclaims and Answer to Kayser-Roth Corporation's*

*Complaint* (the Counterclaim) on 9 June 2025, asserting an additional claim for fraud. (Am. Countercls. ¶¶ 87–97.)

22. Defendant's specific claims for relief are (1) breach of contract for Plaintiff's non-payment of lump sum severance, annual bonuses for years 2021 through 2024, and deferred compensation for years 2021 through 2024, (Am. Countercls. ¶¶ 74–79); (2) NCWHA violations for such non-payment, (Am. Countercls. ¶¶ 80–86); and (3) fraud for Plaintiff's alleged misrepresentation that Defendant's annual bonus and severance payments would be calculated using his annual, not monthly, salary as the "base salary," (Am. Countercls. ¶¶ 87–97).

23. Plaintiff filed the Motion and a supporting brief on 30 July 2025. (Mot.; Mem. L. Supp. Mot., ECF No. 34 [Br. Supp.].) Defendant filed his response on 18 August 2025. (Def.'s Mem. L. Opp'n Mot., ECF No. 35 [Br. Opp'n].) Plaintiff filed its reply on 28 August 2025. (Reply Mem. L. Supp. Mot., ECF No. 41 [Reply].)

24. The Motion has been fully briefed, and the Court held a hearing on the Motion on 12 November 2025. (*See* ECF No. 45.)

25. The Motion is ripe for resolution.

## IV. LEGAL STANDARD

26. When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "whether the allegations of the complaint [or counterclaim], if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation modified); *Maynard v. Crook*, 289 N.C. App. 357, 361 (2023) ("The standard of review for

dismissal of a counterclaim is the same as the standard of review that governs dismissal of a complaint."). The Court must view the counterclaim's allegations in the light most favorable to the non-movant. *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). "[T]he [C]ourt is not, however, required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true." *Estate of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 493 (2013) (citation omitted). "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the [counterclaim] on its face reveals that no law supports the [party's] claim; (2) the [counterclaim] on its face reveals the absence of facts sufficient to make a good claim; or (3) the [counterclaim] discloses some fact that necessarily defeats the [party's] claim.'" *Corwin*, 371 N.C. at 615 (citation omitted).

27.    "As a general proposition . . . matters outside the [counterclaim] are not germane to a Rule 12(b)(6) motion." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 40 (2013) (citation omitted). However, documents attached to and incorporated within a counterclaim may be considered in connection with a Rule 12(b)(6) motion. *Id.* The grant of a Rule 12(b)(6) motion is proper where the plain terms of a contract attached to the counterclaim neutralize the counterclaim's allegations. *See Hall v. Sinclair Refining Co.*, 242 N.C. 707, 709–11 (1955) (complaint dismissed where plain language of contract "neutralized" complaint by releasing defendant from liability); *see also Highland Paving Co.*, 227 N.C. App. at 40–42, 46 (breach of contract claim dismissed where defendant allegedly failed to disburse

proceeds from transaction, but plain language of complaint exhibits showed transaction produced no proceeds).

28. Nonetheless, the grant of a Rule 12(b)(6) motion is improper if the contract attached to the counterclaim is ambiguous. *See WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 824–27 (2015) (reversing grant of motion to dismiss breach of contract claim where underlying contract was ambiguous); *Kingsdown, Inc. v. Hinshaw*, 2016 NCBC LEXIS 15, at \*23–24 (N.C. Super. Ct. Feb. 17, 2016) (denying motion to dismiss where contract was ambiguous, and under claimant's interpretation, claimant alleged valid breach of contract claim).

## V. ANALYSIS

29. Plaintiff contends that (i) Defendant's damages must be limited to the extent they go beyond those for which the Agreement expressly provides; (ii) Defendant's fraud claim must be dismissed because it is time-barred and the Counterclaim's allegations do not satisfy the elements of fraud; and (iii) Defendant's breach of contract and NCWHA claims for the annual bonuses must be dismissed to the extent they are time-barred. (Mot. 1–2; *see generally* Br. Supp.) The Court addresses each argument in turn.

### A. <u>Damages and the "Base Salary"</u>

30. "The goal of contract interpretation is to ascertain the intent of the parties when the contract was made." *Harris v. Ten Oaks Mgmt., LLC*, 2023 NCBC LEXIS 90, at \*10 (N.C. Super. Ct. July 31, 2023) (citing *Morell v. Hardin Creek, Inc.*, 371 N.C. 672, 681 (2018)). "When a contract is plain and unambiguous, the Court can

determine the parties' intent as a matter of law." *Recurrent Energy Dev. Holdings, LLC v. SunEnergy1, LLC*, 2017 NCBC LEXIS 18, at *27 (N.C. Super. Ct. Mar. 7, 2017) (citing *42 E., LLC v. D.R. Horton, Inc.*, 218 N.C. App. 503, 513 (2012)). "If a contract is ambiguous, however, interpretation of the contract is a question of fact[.]" *Id.* (citing *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525 (2012)).

31.     A contract is ambiguous if its language is "fairly and reasonably susceptible to either of the constructions asserted by the parties." *Gay v. Saber Healthcare Grp., L.L.C.*, 271 N.C. App. 1, 7 (2020) (quoting *Salvaggio v. New Breed Transfer Corp.*, 150 N.C. App. 688, 690 (2002)). Whether the language of a contract is ambiguous is a question of law for the Court. *Morrell*, 371 N.C. at 680 (citation omitted).

32.     "[T]he parol evidence rule prohibits the admission of evidence to contradict or add to the terms of a clear and unambiguous contract." *Drake v. Hance*, 195 N.C. App. 588, 591 (2009) (citation omitted). Thus, "[i]f the terms of a contract are unambiguous, then the court 'cannot look beyond the terms of the contract to determine the intentions of the parties.'" *Jackson ex rel. Dogwood Health Tr. v. MH Master Holdings LLLP*, 2025 NCBC LEXIS 43, at *7–8 (N.C. Super. Ct. Apr. 16, 2025) (quoting *Stovall v. Stovall*, 205 N.C. App. 405, 410 (2010)). However, if the terms of a contract are ambiguous, the factfinder may use extrinsic evidence to determine the parties' intent. *See Golden Triangle #3, LLC v. RMP-Mallard Pointe, LLC*, 2022 NCBC LEXIS 88, at *30–31 (N.C. Super. Ct. Aug. 2, 2022).

33. Merger clauses "effectuate the policies of the parol evidence rule; i.e., barring the admission of prior and contemporaneous negotiations on terms inconsistent with the terms of the writing." *Mancuso v. Burton Farm Dev. Co. LLC*, 229 N.C. App. 531, 542 (2013) (citation modified). "Absent evidence or proof of mental incapacity, mutual mistake of the parties, undue influence, or fraud," the Court does not consider parol evidence in interpreting an unambiguous contract. *See Higgins v. Synergy Coverage Sols., LLC*, 2020 NCBC LEXIS 6, at \*13 (N.C. Super. Ct. Jan. 15, 2020) (citation modified); *Mancuso*, 229 N.C. App. at 542.

34. Plaintiff argues that Defendant's claims must be dismissed—or his damages reduced—to the extent Defendant seeks damages beyond those for which the Agreement provides. (Mot. 1; Br. Supp. 11.) Specifically, Plaintiff argues that the Agreement expressly defines the "base salary" to be used in calculating Defendant's bonus and severance payments as Defendant's monthly salary. (Br. Supp. 11–12; Agreement §§ 3, 6.) As Defendant's damages were calculated using his annual salary, Plaintiff contends his damages should be reduced. (Br. Supp. 11–15; *see* Am. Countercls. ¶¶ 59, 77, 97.) To support its argument, Plaintiff asserts that the parties used the words "annual" and "yearly" where they intended to provide for annual terms, and that these words are absent from Section 3 of the Agreement. (Br. Supp. 11–13; *see* Agreement §§ 3–4.)

35. Defendant argues that the amount of recoverable damages and the meaning of ambiguous contract language cannot be decided at the Rule 12(b)(6) stage. (Br. Opp'n 9–15.) Defendant contends that the Agreement "may be considered

ambiguous" because it does not demonstrate a clear intent to define "base salary," which could be interpreted to denote his monthly or annual salary. (Br. Opp'n 10–14.) In support of his argument, Defendant points out that the Agreement does not consistently capitalize "base salary," place this term in quotation marks, or specify that this term was "defined herein," as the Agreement does with some of its other defined terms. (Br. Opp'n 11–12; *see, e.g.*, Agreement § 4)

36. In further support of his argument, Defendant notes that (i) only Section 3 of the Agreement uses the modifier "monthly" before the term "base salary"; (ii) the Agreement uses an annual measure of time when describing the amount of the base salary; and (iii) the Agreement provides that the base salary is "payable in installments no less frequent than monthly," which Defendant interprets to mean that any monthly payments are merely installments that combine to form an annual base salary. (Br. Opp'n 11–12.)

37. Nonetheless, Defendant contends that the ambiguous meaning of "base salary" is clarified by his email exchange with Ms. Cerini. (Br. Opp'n 13–14.) Defendant points out that before the Agreement was finalized, Plaintiff approved his suggestion that it be modified as follows to provide for eighteen months' severance: "Executive shall receive a single lump sum severance payment equal to one and a half times his Base Salary[.]" (Br. Opp'n 14; Am. Countercls. ¶¶ 29–30.) Because eighteen months is equal to one and a half years, not months, Defendant contends that Plaintiff confirmed the "base salary" is his annual salary. (Br. Opp'n 14.) Defendant also argues that the email exchange is excepted from the parol evidence

rule because it merely serves to clarify an ambiguous term, and his execution of the Agreement was procured by fraud. (Br. Opp'n 14–15, 15 n.4.)

38. Plaintiff responds that the frequency with which Defendant's base salary must be paid has no bearing on the base salary being a monthly figure. (Reply 5–6, 12.) Plaintiff further responds that Defendant's email exchange with Ms. Cerini is inadmissible parol evidence because it conflicts with the Agreement's express terms, and Defendant has not established the existence of fraud. (Br. Opp'n 13–14; Reply 6–7.)

39. The Court agrees with Defendant that the term "base salary" is ambiguous. As Defendant points out, the term "base salary" is not consistently capitalized throughout the Agreement. (*See* Agreement §§ 2–4, 6); *see also Legacy Vulcan Corp. v. Garren*, 222 N.C. App. 445, 450 (2012) (consistent capitalization of term indicated it had the same meaning throughout document); *Cnty. of Wake PDF Elec. & Supply Co., LLC v. Jacobsen*, 2020 NCBC LEXIS 103, at *16 (N.C. Super. Ct. Sep. 9, 2020) (contract was ambiguous where term was used "in both capitalized and uncapitalized forms with seemingly conflicting meanings"). As Defendant also points out, the term "base salary" is not set apart with quotation marks and defined, as the Agreement does with some of its other capitalized terms. (*See* Agreement §§ 1–2, 4.) However, as Plaintiff contends, the Agreement does not use the terms "annual" or "yearly" when describing the base salary. Instead, it only uses the word "monthly." (*See* Agreement § 3.) As such, the Court concludes that "base salary" is "fairly and reasonably susceptible to either of the constructions asserted by the parties[,]" and

that the meaning of this term cannot be determined as a matter of law. *See Gay*, 271 N.C. App. at 7 (citation omitted).

40. Accordingly, the Motion is **DENIED** to the extent it seeks to dismiss Defendant's claims, or limit Defendant's damages, on the basis that the term "base salary" means Defendant's monthly salary.

**B.    Fraud**

41. "The essential elements of fraud are: (1) [f]alse representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at *20 (N.C. Super. Ct. Dec. 29, 2016) (quoting *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696 (2009)). "An unfulfilled promise typically cannot serve as the basis for a fraud claim." *Compass Tax Servs. LLC v. Karki*, 2024 NCBC LEXIS 73, at *16 (N.C. Super. Ct. May 20, 2024) (citing *Pierce v. Am. Fid. Fire Ins. Co., Inc.*, 240 N.C. 567, 571 (1954)). "However, 'a promissory misrepresentation may constitute actual fraud if the misrepresentation is made with intent to deceive and with no intent to comply with the stated promise or representation.' " *Id.* (quoting *Braun v. Glade Valley Sch., Inc.*, 77 N.C. App. 83, 87 (1985)).

42. For a fraud claim to succeed, the claimant's "reliance on the fraudulent misrepresentation 'must be reasonable.' " *Conservation Station, Inc. v. Bolesky*, 2023 NCBC LEXIS 164, at *23 (N.C. Super. Ct. Dec. 12, 2023) (quoting *Forbis v. Neal*, 361 N.C. 519, 527 (2007)). "[W]here a representation is controverted by the express terms

of a contract, a [claimant] will be unable, *as a matter of law*, to establish that his reliance is justifiable." *Boone Ford, Inc. v. IME Scheduler, Inc.*, 262 N.C. App. 169, 175 (2018) (citation omitted).

43.     Plaintiff argues that Defendant's allegations fail to set forth a fraud claim. Specifically, Plaintiff contends that Ms. Cerini's alleged misrepresentation—that Plaintiff approved Defendant's receipt of eighteen months' severance if he were terminated without "Cause"—is a mere unfulfilled promise. (Br. Supp. 8; Reply 3–4.) Plaintiff also contends that Defendant fails to allege Ms. Cerini's statement was false when made, and that Defendant only makes a conclusory allegation that Plaintiff never intended to provide eighteen months' severance. (Reply 3–4.)[2]

44.     Defendant contends that his fraud claim is not based on a mere unfulfilled promise. (Br. Opp'n 19–21.) He asserts that his allegations show Plaintiff falsely represented the meaning of "base salary" and its intent to pay him eighteen months' severance, and that these are actionable misrepresentations. (Br. Opp'n 19–21; Am. Countercls. ¶¶ 91, 94–96.) Defendant further contends that whether his reliance was reasonable is a determination that a jury should make. (Br. Opp'n 23.)

45.     The Court agrees with Plaintiff that Defendant's allegations are insufficient to support a fraud claim. Defendant alleges that Ms. Cerini's representation must have been false when it was made because Plaintiff now, years

---

[2] Plaintiff also argues that Defendant's reliance on Ms. Cerini's statement was unreasonable because the statement conflicted with the Agreement's express definition of "base salary." (Br. Supp. 9.) The Court need not address this argument any further due to its conclusion that the term "base salary" is ambiguous. *See supra* Section V.A.

after the negotiation and execution of the Agreement, asserts an interpretation of the Agreement with which Defendant disagrees:

> [Plaintiff] confirmed that "base salary" in the employment [A]greement means [Defendant's] annual salary as 18 months is equal to "one and a half" years. [Plaintiff's] position in the Motion to Dismiss means that [Ms. Cerini's] statement was false at the time it was made and that [Plaintiff] did not intend to honor its promise, which constitutes fraud.

(Am. Countercls. ¶¶ 4, 91.)

46. Such an allegation is insufficient to show that Ms. Cerini misrepresented a past or existing fact while negotiating the Agreement for Plaintiff. *See Zagaroli*, 2016 NCBC LEXIS 106, at \*20; *Forbes v. Par Ten Grp., Inc.*, 99 N.C. App. 587, 594 (1990) ("For actionable fraud to exist, the defendant must have known the representation to be false when making it . . . [t]his determination of truth or falsity must be made at the time of the representation."). As such, the Court concludes that Defendant's allegations are insufficient to support his fraud claim. Accordingly, the Motion is **GRANTED** as to Defendant's fraud claim.

### C. Statutes of Limitations

47. Plaintiff argues that the following of Defendant's claims are time-barred: (i) the breach of contract claim for the 2021 annual bonus, and (ii) the NCWHA claim for the 2021 and 2022 annual bonuses.[3]

48. The statute of limitations for a breach of contract claim is three years. N.C.G.S. § 1-52(1). The three-year statute of limitations begins to run "when the [claimant] knew or should have known that the contract had been breached." *See*

---

[3] Given the Court's conclusion that Defendant's fraud claim fails as a matter of law, the Court does not address the parties' arguments concerning the statute of limitations for this claim.

*United Therapeutics Corp. v. Roscigno*, 2025 NCBC LEXIS 61, at \*19 (N.C. Super. Ct. May 27, 2025) (citation modified); *Chisum v. Campagna*, 376 N.C. 680, 701–02 (2021) ("As a general proposition, 'a statute of limitations should not begin running against [a] plaintiff until [the] plaintiff has knowledge that a wrong has been inflicted upon him.' "). A claim under the NCWHA is subject to a two-year statute of limitations. N.C.G.S. § 95-25.22(f). The statute of limitations "begins to run on the date the promise is broken." *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*, 2024 NCBC LEXIS 99, at \*134 (N.C. Super. Ct. July 12, 2024) (quoting *Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 233 (2010)).

49.     The parties agree that the statutes of limitations for breach of contract and NCWHA claims are three and two years, respectively. (Br. Supp. 15, 17; Br. Opp'n 15.) However, the parties disagree as to whether the Agreement requires payment of an annual bonus by the end of the year in which it is earned, or by 15 March of the year after it is earned. (Br. Supp. 15–19; Br. Opp'n 15–18.) As such, the rules governing disputes over contractual language apply. *See Morell*, 371 N.C. at 681; *Gaskill v. Jennette Enters., Inc.*, 147 N.C. App. 138, 140–42 (2001).

### 1.     2021 Annual Bonus

50.     Plaintiff argues that Defendant's breach of contract and NCWHA claims for the 2021 annual bonus are time-barred because this bonus, if due at all, was due on 31 December 2021. (Br. Supp. 15–16.) According to Plaintiff, the Agreement's plain language indicates that the "year in which the bonus is earned" and the "year of the payment of the bonus" are the same year. (Br. Supp. 16; Agreement § 4.) Plaintiff

also argues that the Counterclaim admits the annual bonus is payable the year in which it is earned:

> [Plaintiff's] Board of Directors . . . failed to specify goals for [Defendant's] achievement of the annual bonuses and deliver them in writing to [Defendant] by March 30th for each of the years 2019 through 2024, and no bonus was paid to [Defendant] *in each of these years*, in violation of the terms of the Employment Agreement.[4]

(Am. Countercls ¶ 26 (emphasis added); Br. Supp. 16.) Because Defendant filed the Original Counterclaim on 14 March 2025—more than three years after 31 December 2021—Plaintiff contends that Defendant's claims for the 2021 bonus are untimely. (Br. Supp. 16–17.)

51. Defendant argues that the annual bonus is payable by 15 March of the year after it is earned. (Br. Opp'n 16.) Defendant, therefore, contends that his breach of contract and NCWHA claims accrued on 15 March 2022 and were timely filed. (*See* Br. Opp'n 16.) Defendant points to three sentences in Section 4 of the Agreement to support his interpretation of the bonus's payable date:

> [Defendant] is eligible to participate in the Executive bonus plan beginning in calendar year 2019[.] . . . In the event [Defendant] dies or, becomes total [sic] and permanently disabled and terminates employment, [Defendant] may receive a pro-rata of the Annual Bonus through the date of termination of employment (with the goals also pro-rated for the purpose of measuring achievement), payable no later than

---

[4] The Court notes that this allegation appears in the Original Counterclaim, (Orig. Countercl. ¶ 25), and that Plaintiff raised the inconsistency of this allegation with Defendant's claims in its motion to dismiss the Original Counterclaim, (Mem. L. Supp. Pl.'s Mot. Partial Dismissal Def.'s Countercls. 10, ECF No. 16). It is troubling to the Court that Defendant, upon being notified of this inconsistency, did not correct it in the Counterclaim.

However, the allegation that Plaintiff violated the Agreement by failing to pay the bonuses in the year they were earned is a legal conclusion that, at the Rule 12(b)(6) stage, the Court ignores. *McCrann v. Pinehurst*, 225 N.C. App. 368, 377 (2013). Thus, the Court concludes that this allegation, standing alone, does not warrant the dismissal of the Counterclaim.

75 days after close of applicable fiscal year. If [Defendant] is discharged for Cause, as defined, at any time before the date of bonus distribution, he shall forfeit any and all rights to a bonus under the Plan, even if the employee is on the payroll on the last day of the Plan Year.

(Agreement § 4; Br. Opp'n 16–17.)

52. Defendant argues that the first sentence expressly incorporates the "Executive bonus plan," an extrinsic agreement that requires payment by 15 March of a bonus earned in the previous year. (Br. Opp'n 16; Agreement § 4; Am. Countercls. ¶ 23.) Defendant argues that the second sentence provides for payment by 15 March of the year after the bonus is earned, as seventy-five days after the close of the fiscal year is 15 March. (Br. Opp'n 16; Agreement § 4.) Defendant contends that the last sentence "has no meaning whatsoever" if it is not understood to indicate that the annual bonus is paid the year after it is earned. (Br. Opp'n 17.)[5]

53. Defendant also argues that Section 15 of the Agreement, in requiring compliance with Internal Revenue Code (IRC) § 409A, indicates that the annual bonus is due by 15 March of the year after it is earned. (Br. Opp'n 17; Agreement § 15.) Defendant cites the following language to support his contention: "A deferral of compensation does not occur under a plan with respect to any payment . . . that is not a deferred payment, provided that the service provider actually or constructively

---

[5] Defendant also contends that it is improper for the Court to decide whether the statute of limitations bars recovery of certain damages. (Br. Opp'n 9–10.) However, "[a] 12(b)(6) motion is an appropriate vehicle for dismissing a claim barred by the statute of limitations." *Crabtree v. Smith*, No. COA16-864, 2017 N.C. App. LEXIS 243, at *7 (N.C. Ct. App. Apr. 4, 2017) (quoting *Bowlin v. Duke Univ.*, 119 N.C. App. 178, 183 (1995)). As such, the Court may properly decide whether Defendant's claims for certain-year annual bonuses are time-barred.

receives such payment on or before the last day of the applicable 2 1/2 month period." (Br. Opp'n 17); 26 C.F.R § 1.409A-1(b)(4) (2025).

54. Citing the Agreement's merger clause, Plaintiff responds that the Agreement does not incorporate an extrinsic bonus plan. (Reply 8.) Rather, Plaintiff contends that the "Executive bonus plan" is the plan described in Section 4 of the Agreement. (Reply 8.) Plaintiff also responds that, per the Agreement's express terms, an annual bonus is only payable seventy-five days after the end of the year in which it is earned if Defendant dies or becomes disabled—neither of which has happened here. (Reply 9.)

55. Plaintiff further responds that the forfeiture provision in Section 4 does not indicate that the annual bonus is paid the year after it is earned. (Reply 9.) Instead, Plaintiff contends that this provision addresses a unique scenario: if Defendant is discharged "for Cause" in the middle of a pay period, Defendant has forfeited the annual bonus but will remain on payroll—potentially until the end of the year—to receive payment for services performed through the date of discharge. (Reply 9–10; Agreement § 4.) Plaintiff emphasizes that Defendant forfeits the annual bonus even if he is on "payroll" on the last day of the plan year, not if he is "employed" on the last day of the plan year. (Reply 10.) As such, Plaintiff contends that the forfeiture provision does not lack meaning if it is not interpreted to mean that the annual bonus is paid the year after it is earned.

56. Concerning Section 15 of the Agreement, Plaintiff argues that IRC § 409A defines when deferred compensation arises, but it does not extend the time for

payment of the annual bonus from the end of year in which it is earned to 15 March of the following year. (Reply 10–11.) Plaintiff also notes that payment of a bonus by 31 December of the year in which it is earned complies with IRC § 409A. (Reply 11.)

57. The Court concludes that the statute of limitations for Defendant's NCWHA claim has expired regardless of which party's position the Court adopts. According to Defendant's interpretation of the Agreement, the latest time at which Defendant could have brought this claim for the 2021 annual bonus is 15 March 2024. Defendant did not file the Original Counterclaim until 14 March 2025. Thus, the Motion is **GRANTED** with respect to Defendant's NCWHA claim for the 2021 annual bonus.

58. As to Defendant's breach of contract claim, the Court determines that the Agreement's language is ambiguous. On the one hand, it is reasonable to interpret the Agreement as requiring payment of the bonus the year in which it is earned such that Defendant's claim would be untimely. Section 4 states that the Board must "specify goals for achievement of each annual bonus" by 30 March of the year the bonus is earned; that these goals must be set forth in writing and delivered to Defendant by 30 March "of the year of the payment of the bonus"; and that if the Board fails to timely set forth and deliver the goals, Defendant's bonus "shall be paid at 100% of maximum payout." (Agreement § 4.) Thus, under Defendant's interpretation, the Agreement would require the Board to pay Defendant the bonus by 15 March—before the 30 March deadline for the delivery of the goals and, potentially, before the amount of the bonus has been determined. This discrepancy

does not exist if the Agreement requires that the bonus be paid by 31 December of the year in which it is earned.

59. On the other hand, it is reasonable to interpret the Agreement as allowing payment of the bonus the year after it is earned such that Defendant's claim would be timely. Section 4 indicates that if Defendant is discharged "for Cause," he forfeits his right to an unpaid bonus "even if [he] is on the payroll on the last day of the Plan Year." (Agreement § 4.) This language could reasonably be read to indicate that, if Defendant is on payroll on the last day of the year, has not been discharged "for Cause," and still has not received payment of the bonus, he would be entitled to receive the bonus the following year. Further, if the fiscal year ends on 31 December as Defendant contends, (*see* Br. Opp'n 17), it would arguably be impractical for the Board to determine whether Defendant has met the specified goals and pay the bonus by the end of the year. *See Variety Wholesalers, Inc.*, 365 N.C. at 525 ("[C]ontracts are to be construed 'consistently with reason and common sense.' " (quoting *Stephens Co. v. Lisk*, 240 N.C. 289, 293 (1954))).

60. The Court, therefore, concludes that the payable date of the 2021 annual bonus is ambiguous. Accordingly, the Motion is **DENIED** as to Defendant's breach of contract claim for the 2021 annual bonus.

### 2. 2022 Annual Bonus

61. Given the Court's reasoning above, the Court further concludes that the payable date of the 2022 annual bonus is ambiguous. Accordingly, the Motion is **DENIED** as to Defendant's NCWHA claim for the 2022 bonus.

## VI. CONCLUSION

62. For the foregoing reasons, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as follows:

a. The Motion is **DENIED** to the extent it seeks to have Defendant's damages limited or claims dismissed on the basis that the "base salary" is Defendant's monthly salary;

b. The Motion is **GRANTED** as to Defendant's fraud claim;

c. The Motion is **GRANTED** as to Defendant's NCWHA claim for the 2021 annual bonus;

d. The Motion is **DENIED** as to Defendant's breach of contract claim for the 2021 annual bonus; and

e. The Motion is **DENIED** as to Defendant's NCWHA claim for the 2022 annual bonus.

**IT IS SO ORDERED**, this the 29th day of December, 2025.

/s/ Michael L. Robinson
Michael L. Robinson
Chief Business Court Judge